

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| FEDERATED INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. CV-08-S-0770-NE |
| AVANS MACHINE & TOOL; STEVE AVANS and JEFF AVANS d/b/a AVANS MACHINE & TOOL; PAM AVANS; and NOVA HOPKINS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION, ORDER, AND JUDGMENT

This case arises out of a claim made by defendants Pam and Steve Avans for

underinsured motorist benefits under the terms of an insurance policy issued by

Federated Insurance Company to a business entity known as "Avans Machine &

Tool."   Federated commenced this action by filing a complaint for declaratory

judgment against defendants, requesting the court to declare that Federated has no

coverage responsibilities for any claims asserted or to be asserted under the subject

policy.[1]  Defendants filed an answer and counterclaim, asserting breach of contract

and bad faith refusal to pay valid insurance claims against Federated.[2]  The case was

---

[1] *See* doc. no. 1 (Complaint).

[2] *See* doc. no. 8 (Answer and Counterclaim).

originally assigned to Judge Inge Prytz Johnson.  Judge Johnson bifurcated the declaratory judgment action and the counterclaims, ruling that discovery on the counterclaims would only proceed if the court determined that coverage exists under the policy at issue.[3]  The parties filed cross motions for summary judgment on the issue of coverage.[4]

On March 23, 2009, Judge Johnson entered a memorandum opinion[5] and accompanying order denying Federated's motion for summary judgment on the issue of coverage, but granting the Avanses' motion for summary judgment on the same issue.  Judge Johnson determined, based on an ambiguity in the policy, that uninsured/underinsured motorist ("UM/UIM") coverage does exist in favor of Pam and Steve Avans under the terms of the policy issued by Federated to Avans Machine & Tool, and she ordered the parties to "proceed with discovery concerning the remaining defendants'/counterclaim plaintiffs' surviving counterclaims" on the issue of Federated's alleged bad faith refusal to pay valid insurance claims.[6]  The case was subsequently transferred to this court,[7] and is presently before the court on the motion for summary judgment filed by Federated Insurance Company on the Avanses'

---

[3] *See* doc. no. 21 (Amended Scheduling Order).

[4] *See* doc. nos. 22, 23.

[5] *See* doc. no. 41.

[6] Doc. no. 42.

[7] *See* doc. no. 47 (Order of Recusal).

2

counterclaims.[8]

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[9]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but

---

[8] *See* doc. no. 54.

[9] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is material to an issue affecting the
> outcome of the case.  The relevant rules of substantive law dictate the
> materiality of a disputed fact.  A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party
> for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921).  *See also Anderson v.*

*Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law").

## II.  FACTUAL BACKGROUND

### A.    Relevant Provisions of the Federated Policy

Federated Mutual Insurance Company issued a Commercial Package Policy

numbered 2055926 to Avans Machine & Tool that was effective from July 7, 2005

through July 7th of the following year.[10]   Avans Machine & Tool is owned and

operated by Steve Avans and Jeff Avans, who are equal partners with equal

ownership interests in the company.[11]  Several provisions of the policy are pertinent

to the resolution of this litigation.  The Declarations Page of the Federated Policy

---

[10] *See* doc. no. 25, Ex. Q (Policy).

[11] *See* doc. no. 25, Ex. A (Deposition of Steve Avans), at 39.

4

provides as follows:

NAMED INSURED AND MAILING ADDRESS

**AVANS MACHINE AND TOOL**
**\*STEVE AVANS AND JEFF AVANS**
**25490 ALA HWY 79**
**SCOTTSBORO, AL35768**

RISK ADDRESS (if different than above):
POLICY PERIOD: from **07-07-2005** to **07-07-2006**   12:01 A.M.
Standard time at the designated business premises

BUSINESS OPERATIONS:
OPERATE AS: **Partnership**[12]

The Commercial Package Policy Endorsement states that

The first Named insured shown in the Declarations includes the
person(s) or organization(s) designated below, subject to the following
additional Common Policy Conditions:[13]

### Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 1 | **AVANS MACHINE AND TOOL** | **Partnership** | **63-0997493** |
| 1 | **STEVE AVANS AND JEFF AVANS DBA** | **Partnership** | **63-0997493** |

The general coverage section under the policy, found in the Alabama Uninsured

Motorists Coverage Endorsement to the Business Auto Coverage Form, provides as

follows:

---

[12] Doc. no. 25, Ex. R (Declarations Page) (boldface in original).

[13] Doc. no. 25, Ex. S (Endorsement).

**A.     Coverage**

1.     We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" cause by an "accident."   The owners or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle."

**B.     Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1.     An individual, then the following are "insureds":

   a.     The Named Insured and any "family members"

   b.     Anyone else "occupying" a covered "auto" or temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c.     Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

2.     A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a.     Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b.     Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another

6

"insured."[14]

## B.     The Motor Vehicle Accident

On April 23, 2006, Steve Avans, Pam Avans, and Nova Hopkins were involved in a motor vehicle accident at the intersection of Pulaski Pike and Monroe Road in Huntsville, Alabama.[15]  Steve Avans was driving Ms. Avans and Ms. Hopkins to church in Ms. Hopkins' 1989 Oldsmobile Cutlass when they were struck by a 2002 Ford Ranger operated by Jack Loy.[16]  The Avanses testified that Mr. Loy pulled into Mr. Avans' lane of travel and struck Ms. Hopkins' vehicle, knocking it off of the road and into a river.[17]  As a result of the accident, Steve Avans, Pam Avans, and Nova Hopkins suffered various serious injuries.[18]

Following the accident, the Avanses filed claims against Mr. Loy's automobile insurance carrier, Alfa, and each recovered $100,000.[19]  In addition, Pam Avans and Steve Avans filed claims for under-insured motorist benefits against Ms. Hopkins's automobile insurance policy issued by Allstate, and recovered a total of $20,000.[20]

---

[14] Doc. no. 25, Ex. T (Alabama Uninsured Motorist Coverage Endorsement).

[15] *See* Deposition of Steve Avans, at 44-45.

[16] *See id.*

[17] *See id.*

[18] *See* Deposition of Steve Avans, at 170-79; doc. no. 25, Ex. C (Deposition of Pam Avans, at 28-31.

[19] *See* Deposition of Steve Avans, 160-66; Deposition of Pam Avans, at 58-59.

[20] *See id.*

Neither the Avanses nor Mrs. Hopkins initially notified Federated about the accident. Ms. Hopkins' Oldsmobile Cutlass was not an insured automobile under Federated policy number 2055926, and the occupants of the automobile were not engaged in any business activity related to Avans Machine & Tool at the time of the accident.[21]

## C.    Federated's Investigation of Coverage

Although Steve and Pam Avans did not initially notify Federated about the accident, James Howell, Federated's Marketing Representative who handled the Avans Machine & Tool account, learned about the accident on or about April 25, 2006, and opened a claim file on the same day.[22] The file was assigned to Beth Davis Plunkett, who is a Federated Claims Supervisor.[23] On April 25, 2006, Mrs. Plunkett left a voice mail message for Mr. Howell, asking him to contact her about the subject accident, and noted in the Federated file that she wanted to "know what we can do from this end."[24]

On April 27, 2006, Mrs. Plunkett called Avans Machine & Tool and spoke with Linda Avans, Steve Avans' sister-in-law, to inquire about the accident.[25] Federated learned that Steve Avans, Pam Avans, and Nova Hopkins had been involved in a

---

[21] *See* Deposition of Steve Avans, at 111-21.

[22] *See* doc. no. 56, Ex. A (Deposition of Beth Plunkett), at 12-14.

[23] *See id.*

[24] *See id.* at 36.

[25] *See id.* at 14-16.

motor vehicle accident while occupying Ms. Hopkins' vehicle.[26]  After speaking with

Linda Avans, Ms. Plunkett documented Federated's initiation of an investigation

concerning the possible existence of UM/UIM coverage in the claim file.[27]  Mrs.

Plunkett then began to determine whether coverage existed by sending a

memorandum to Federated's Home Office Manager, David Dickman, asking Mr.

Dickman for advice.[28]  Mrs.  Plunkett's memo states as follows:

> **DAVE, I HAVE A COVG QUESTION FOR YOU.  WANTING TO
> CONFIRM THAT UM COVERAGE ON INSD POLICY WOULD
> OR WOULD NOT BE AVAILABLE FOR INSD AND WIFE.** OUR
> INSD OWNER AND WIFE WERE INJ IN AUTO ACCIDENT WHILE
> RIDING IN NON-OWNED VEH (VEH OWNED BY WIFE'S
> MOTHER) AND SUSTAINED INJS AS DID MOTHER-IN-LAW.
> ALL THREE WERE IN HOSPITAL FOR A FEW DAYS AND
> MOTHER STILL IS SO I HAVE CONCERNS THAT AT FAULT
> CLMT LIMITS WILL BE EXHAUSTED.  **OUR INSURED HAS
> SYMBOL 2A FOR UM COVG, THIS MEANS OWNED AUTOS
> ONLY, WOULD THIS MEAN THAT IN ORDER FOR UM TO BE
> AVAIL TO INSD AND WIFE THEY MUST HAVE BEEN IN AN
> INSD VEH?** IF IT IS AVAILABLE IT IS MY UNDERSTANDING
> THAT THE LIMIT, **$40K, CAN BE STACKED UP TO THREE
> TIMES MAKING IT $120K IN COVG AND THAT THIS IS MOST
> POLICY WOULD PROVIDE IN ANY ONE ACCIDENT**.  THIS
> WOULD MEAN COVG LIMIT FOR CLAIM IS $120K.  IS THAT
> YOUR UNDERSTANDING AS WELL? THANKS, BETH [29]

On April 27, 2006, Mr. Dickman responded to Mrs. Plunkett's memorandum,

---

[26] *See id.*

[27] *See* doc. no. 56, Ex. B (Claim File Document), at FED 0090.

[28] *See* Deposition of Beth Plunkett, at 16-18.

[29] Claim File Document, at FED 0091 (emphasis supplied).

stating that UM/UIM coverage is limited to the named insured and defined family

members:

> BETH, WITH SYMBOL 2A, MY UNDERSTANDING IS THAT
> UM/UIM IS LIMITED TO THE NAMED INSDS & DEFINED
> FAMILY MEMBERS.  DOES THE MOTHER-IN-LAW MEET THE
> FAMILY MEMBER DEFINITION?
>
> YOU SHOULD ALSO LOOK AT ANY SHARED COVG.FOR THE
> MOTHER-IN-LAW IF SHE IS NOT A "FAMILY MEMBER" AND
> HER VEHICLE WAS BEING USED BY OUR NAMED INSD AS A
> TEMP. SUBSTITUTE FOR A COVERED AUTO DUE TO THE
> BREAKDOWN/REPAIR/SERVICING . . . IF SO, LOOK AT OTHER
> INS. LANG. & SHARING.
>
> OTHERWISE, YOU WOULD HAVE **MAX STACKING UP TO 3X's
> THE LIMIT PER THE ACCIDENT LIMIT, WHICH GET
> SHARED BET. ALL POTENTIALLY INSURED INDIVIDUALS
> TOTAL, SO YOU COULD HAVE CUMULATIVE TOTAL
> RESERVES OF $120K**, IF APPROPRIATE. . . .[30]

On April 28, 2006, Mrs. Plunkett left a voice mail message for Steve Avans at Avans

Machine & Tool and noted in Federated's claim file that she had done so.[31]  On the

same date, Mr. Dickman sent a memorandum to Mrs. Plunkett instructing her to set

reserves for bodily injury damage and property damage.[32]

On May 11, 2006, Mrs. Plunkett spoke with Linda Avans about whether

---

[30] Claim File Document, at FED 0093; *see* Deposition of Beth Plunkett, at 21-22 (emphasis supplied).

[31] *See* Claim File Document, at FED 0095; Deposition of Beth Plunkett, at 36-38.

[32] *See id.*

UM/UIM coverage existed and documented that conversation in the claim file.[33]

After speaking with Linda Avans, Mrs. Plunkett sent another memorandum to Mr.

Dickman concluding that UM/UIM coverage does not exist for the Avans because

Federated's Declarations Page designates the Name Insured as a partnership, and

accordingly, UM/UIM coverage is available only to someone occupying a covered

automobile or a temporary substitute.[34]

**DAVE, AFTER TALKING W/ INSURED AGAIN, I AM THINKING THAT THERE IS ACTUALLY NO UM/UIM COVG AVAILABLE ON THIS LOSS FOR THE FOLLOWING REASONS. INSD BUSINSS IS A PARTNETSHIP AND UNDER THE CA 21 59 IF THE NAMED INSD IS A PARTNERSHIP THAN** [*sic*] **INSDS ARE ANYONE "OCCUPYING" A COVERED "AUTO" OR A TEMPORARY SUBSTITUTE.  ON THE DEC PAGE UM COVERAGE IS PROVIDED ON SYMBOL CODE 2A WHICH IS OWNED AUTOS ONLY OR TEMP SUBSTITUTES.**  IN THIS CASE, ONE OF THE PARTNERS WAS RIDING IN HIS MOTHER-IN-LAW'S VEH GOING TO CHURCH, THIS IS NOT AN OWNED AUTO AND NOT A TEMPORARY SUBSTITUTE.  TO ME THIS MEANS THAT THERE IS NO UM COVG FOR INSD UNDER THIS BACP.  INSD HIMSELF DIDNT THINK THERE WAS AND IS GOING THROUGH HIS PAP. WOULD YOU AGREE?  THANKS, BETH[35]

On the same day, Mr. Dickman responded to Mrs. Plunkett's memorandum

indicating that he agreed with Mrs. Plunkett's determination that no UM/UIM

coverage existed.[36]

---

[33] *See* Claim File Document, at FED 0097.

[34] *See* Claim File Document, at FED 0096.

[35] *Id.* (emphasis supplied).

[36] *Id.*

On May 11, 2006, Federated sent a letter to Steve Avans explaining Federated's inability to pay UM/UIM benefits to the Avans and Ms. Hopkins based on the policy provisions applicable to a business designated as a partnership.[37] The letter reads, in pertinent part, as follows:

> Please be advised that we are unable to offer you any Uninsured/Underinsured Motorist Coverage under your Business Auto Policy, policy number 2055926. The Uninsured/Underinsured motorist coverage endorsement CA 21 59, specifies that coverage is provided to an "insured" while occupying a covered "auto."  Your coverage specifies that covered "autos" are owned "autos" only.  The policy reads as follows:

> **A.    Coverage**
> 1.    We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle."  The damages must result from "bodily injury" sustained by the "insured" cause by an "accident."  The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle."

> **B.    Who Is An Insured**
> If the Named Insured is designated in the Declarations as:
> 2.    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
> a.    Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto."  The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

> Per our investigation of the facts of this accident, you were riding in your mother-in-law's vehicle when this accident occurred and this

---

[37] *See* doc. no. 56, Ex. D (Letter dated May 11, 2006).

vehicle was not owned by Avans Machine & Tool.  Therefore, we will be unable to pay for any damages to you as a result of this accident.[38]

As of May 11, 2006, the Avanses still had not filed a claim for UM/UIM benefits.  More than one year later, however, on August 20, 2007, the Avanses' counsel sent a letter to Federated asking for a copy of the Federated policy.[39]  In response, Mrs. Plunkett sent a letter to the Avanses' counsel enclosing the UM/UIM endorsement and the Declarations Page, reiterating its inability to offer UM/UIM coverage to the Avanses and Ms. Hopkins.[40]

On October 26, 2007, the Avanses' counsel sent a letter to Federated asserting that Steve Avans is an individual named insured under the Federated policy, and as such, is entitled to UM/UIM coverage.[41]  The Avanses' counsel also stated that he had consulted with three insurance professionals who had led him to the opinion that there was coverage for the Avans.  On October 31, 2007 Mrs. Plunkett sent a memorandum to Mr. Dickman conveying the Avanses' counsel's assertion.[42]  On November 7, 2007, Mr. Dickman responded to Mrs. Plunkett's memorandum as follows:

> As I read the Decl page, the Name Insd: is listed as operating as a Partnership, not as an Individual.  Steve and Jeff Avans are the

---

[38] *Id.*

[39] *See* doc. no. 56, Ex. E (Letter dated Aug. 20, 2007 from Avanses' counsel).

[40] *See* doc. no. 56, Ex. F (Letter dated Aug. 20, 2007 from Federated).

[41] *See* doc. no. 56, Ex. G (Letter dated Oct. 26, 2007).

[42] *See* Claim File Document, at FED 0059.

Partners.  Who is an Insd is different for individuals as opposed to a Partnership.  Under the Partnership coverage, they must be occupying a covered auto or temp. substitute.[43]

After exchanging memoranda with Mr. Dickman, Mrs. Plunkett spoke with the Avanses' counsel about Federated's coverage position and documented having done so as follows:

> RHC to cell, 256-508-4622.  Advised him I had gotten his letter and that our position stands, no UM coverage for his client as his business is a partnership and per the lang of the coverage, in a partnership the coverage only applies if a party is riding in a covered auto or temp substitute and in this case, Mr. Avans was not so I am afraid we cannot offer the coverage.  He disagrees with this.[44]

On November 9, 2007, Federated responded to the Avanses' counsel by letter, reiterating its coverage position in writing.[45]  One week later, the Avanses' counsel sent another letter to Federated disputing Federated's coverage position, but admitting that Avans Machine & Tool operates as a partnership.[46]  Mrs.  Plunkett telephoned the Avanses' counsel to advise him that Federated disagreed with his position.[47]

After this exchange of letters between Federated and the Avanses' counsel, Federated hired counsel on November 19, 2007 to examine the coverage issue.[48]

---

[43] Claim File Document, at FED 0061.

[44] Claim File Document, at FED 0065.

[45] Doc. no. 56, Ex. H (Letter dated Nov. 9, 2007).

[46] Doc. no. 56, Ex. I (Letter dated Nov. 16, 2007).

[47] *See* Claim File Document, at FED 0089.

[48] *See* Claim File Document, at FED 0096; Deposition of Beth Plunkett at 50.

14

On April 24, 2008, the Avanses' counsel sent a letter to Federated concerning the availability of UM/UIM coverage, threatening litigation if Federated did not accept the Avanses' coverage position by April 30, 2008.[49]  Federated filed this declaratory action on May 1, 2008, seeking a judgment declaring that it was not obligated to pay claims asserted by Pam and Steve Avans for uninsured or under-insured motorist benefits ("UM/UIM") under the terms of the insurance policy Federated issued to Avans Machine & Tool.[50]  The Avanses filed an answer to Federated's complaint on June 4, 2008, in which they also asserted a counterclaim contending that Federated had breached its contract of insurance, and that it had, in bad faith, intentionally refused to pay valid UM/UIM claims without any legitimate, arguable or debatable reason for failing to do so.[51]

## III.  DISCUSSION

### A.    Bad Faith Counterclaim

The Avanses allege that Federated's denial of uninsured/underinsured motorist benefits constitutes bad faith.  Alabama recognizes two types of bad faith claims — normal and abnormal — each of which must be analyzed under a unique standard. *State Farm Fire and Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999).  In a normal

---

[49] *See* doc. no. 56, Ex. J (Letter dated April 24, 2008).

[50] *See* doc. no. 1.

[51] *See* doc. no. 8.

bad faith case arising from an insurance claim, the plaintiff bears the burden of showing the absence of any reasonably legitimate or arguable reason for denial of a claim. *See id.* at 305. The plaintiff in a normal bad faith case has the burden of proving

(a)   An insurance contract between the parties and a breach thereof by the defendant;

(b)   An intentional refusal to pay the insured's claims;

(c)   The absence of any legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)   The insured's actual knowledge of the absence of any legitimate or arguable reason; and

(e)   If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Id.* at 304. "In the normal case, in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982).

The Alabama Supreme Court also has identified "abnormal" cases in which a bad faith claim can consist of: intentional or reckless failure to properly investigate

the claim or subject the results of the investigation to cognitive review; the manufacture of a debatable reason to deny a claim; or reliance on a "subjective belief" than ambiguous portion of a policy provides a basis for denying a claim. *See Thomas v. Principal Financial Group*, 566 So. 2d 735 (Ala. 1990).

Alabama law is clear that the relevant evidence that should be considered on a bad-faith denial of an insurance policy claim is the evidence that was in front of the insurance company at the time it denied the claim. *See United States Auto Association v. Wade*, 544 So. 2d 906, 915 (Ala. 1989); *National Savings Life Insurance Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) ("Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision is made.")

An "action based on the tort of bad faith is an extreme remedy and is available only in extreme circumstances concerning an unexcused failure to process a claim or to pay policy benefits." *Alfa Mutual Insurance Co. v. Northington*, 604 So. 2d 758, 760 (Ala. 1992). "Bad faith . . . is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, good faith and fair dealing through some motive or self interest or ill will." *Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981).

**1. Normal Bad Faith**

Although Judge Johnson determined that coverage exists due to an ambiguity in the policy, the Avanses "must go beyond a mere showing of nonpayment and prove bad faith nonpayment, a nonpayment without any reasonable ground of dispute — a failure to pay even though the insurer had no legal or factual defense to the claim." *Bush v. Ford Life Insurance Co.*, 682 So. 2d 46, 49 (Ala. 1996). "When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

The Avanses argue that Federated had no reasonably legitimate or arguable reason for the refusal to pay their claim. However, Federated contends, and this court agrees, that it had such a reason. Federated determined that the designation of the named insured under the subject policy was Avans Machine & Tool, and that Avans Machine & Tool operates as a partnership.[52] Mrs. Plunkett testified:

> I would, again, look to this endorsement, and I would look to see how the named insured is designated in the declarations. If they were designated as a partnership and still named one line by each with their own Social Security Numbers – if they're still a partnership, I would say that the coverage demands that they be in a covered auto.[53]

After identifying the named insured, Mrs. Plunkett reviewed the UM/UIM coverage

---

[52] *See* doc. no. 56, Ex. C (Declarations Page).

[53] See Deposition of Beth Plunkett, at 62.

18

provisions under the Federated policy.[54]   Because Federated determined that the
named insured under the Federated policy was designated as a partnership, Federated
examined Section B.2 of the UM/UIM endorsement.[55]   Since the Avanses had
occupied Mrs. Hopkins' vehicle, which is not a covered automobile under the
Federated policy, Federated determined that it owed no UM/UIM benefits to the
Avans as required under B.2 of the UM/UIM endorsement.[56]   Federated determined
that Section B.1 did not apply because its named insured was not designated as an
individual.[57]   These facts demonstrate that Federated had a reasonably legitimate and
arguable reason not to offer UM/UIM benefits to the Avanses.

Furthermore, the Avanses cannot establish that Federated had actual knowledge
of the absence of any reasonably legitimate or arguable reason for the refusal to offer
UM/UIM benefits.   In order for the Avanses to establish a normal bad faith claim,
they must show a refusal to pay coupled with a conscious intent to injure.   *See Davis
v. Cotton States Mutual Insurance Co.*, 604 So.2d 354, 359 (Ala. 1992).   The Avanses
have shown no evidence of an intent to injure.   To the contrary, the evidence shows
that Federated initiated its investigation of this matter *on its own, without having been*

---

[54] *See id.* at 70-72.

[55] *See id.*

[56] *See id.*

[57] *See id.*

*notified by the Avanses*.  Federated investigated and evaluated the coverage issue based on the information that was available to it at the time.

Although Judge Johnson determined that the Federated policy offers UM/UIM coverage to the Avans based on an ambiguity in the policy, that fact is not alone sufficient to establish that Federated had actual knowledge of the absence of a reasonably legitimate or arguable reason for taking the coverage position that it took. The Alabama Supreme Court has held that mere negligence, mistake, and/or poor judgment by an insurer is insufficient to support a claim of bad faith.  *Coleman v. Gulf Life Insurance Co.*, 514 So.2d 944, 946 (Ala. 1987).  The Avanses' failure to provide evidence of a conscious intent to injure is fatal to their normal bad faith claim.

### 2.  Abormal Bad Faith

In order for the Avanses to establish an "abnormal" case of bad faith failure to pay an insurance claim, they must show one of the following:  intentional or reckless failure to properly investigate the claim; intentional or reckless failure to subject the results of the investigation to cognitive evaluation or review; the manufacture of a debatable reason to deny a claim; or reliance on a "subjective belief" that an ambiguous portion of a policy provides a basis for denying a claim.  *See Thomas v. Principal Financial Group*, 556 So. 2d 735 (Ala. 1990).  Regardless of whether the

bad faith claim is "normal" or "abnormal," the plaintiff must establish a "dishonest purpose," even when reckless conduct of the defendant is present.  *State Farm Fire and Casualty Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999).

In this case, the Avanses have not presented any evidence to establish that Federated intentionally or recklessly failed to investigate the existence of coverage, or that Federated intentionally or recklessly failed to subject the results of the investigation to cognitive review.  As explained in Section III(A)(1), *supra*, Federated actually initiated the investigation of whether UM/UIM coverage exists under the policy.  In conducting the evaluation, Federated involved, on numerous occasions, its Home Office Claims Manager, David Dickman, to determine whether coverage existed.  From the time of the automobile accident to the filing of this action for declaratory judgment, Federated proactively investigated and reviewed the issue of coverage, as shown in the extensive memoranda and letters contained in the claim file.[58]

Similarly, the Avanses cannot present any evidence that Federated manufactured a debatable reason not to offer UM/UIM benefits.  As explained in Section III(A)(1), *supra*, the court finds that Federated had a reasonably legitimate and arguable reason for its decision.

---

[58] See doc. no. 56, Ex. B(Claim File Documents).

The Avanses argue that Federated relied on a "subjective belief" that an ambiguous portion of a policy provides a basis for denying a claim.  It is true that Judge Johnson determined that coverage exists for the Avanses based upon an ambiguity in the policy.  However, the leading case relied on by the court to reach that conclusion is a Montana state court case that had not been decided at the time that Federated denied coverage to the Avanses in May of 2006.  *See Modroo v. Nationwide Mutual Fire Insurance Co.*, 191 P. 3d 389 (Mont.  2008).  Counsel for the Avanses took the depositions of:  the claims adjuster in this case, Mrs. Plunkett; as well as her Regional Claims Supervisor, John Swan; Federated's Home Office Claim Manager, David Dickman; and the underwriter for Federated with responsibility for the subject policy, Dan Filzen.  Each of these witness testified that Federated has never had a problem with, or any litigation concerning, any ambiguity or confusion concerning the way in which business entities, including partnerships, and the principals of partnerships, are designated by the Federated policy.  Of particular significance to this case, each one of these witnesses testified that Federated is not even licensed to sell personal lines of insurance.  The Avanses provide no evidence to establish that any of the employees at Federated had a subjective belief that an ambiguity existed.  To the contrary, the evidence before the court suggests that the Federated employees uniformly determined, at the time of the

22

denial, that the named insured was designated as a partnership, and that such a designation dictated the result that no coverage was available under the policy. The Avanses have presented no evidence that any employee at Federated considered the named insured block to be ambiguous at any time prior to the denial of coverage. Any issues identified by the Avanses' counsel regarding a potential ambiguity in the policy were raised months after Federated had denied coverage.

The Avanses emphasize three arguments in support of their abnormal bad faith claim.[59]  First, they contend that Federated's denial of coverage before the Avanses had ever filed a claim constitutes evidence of bad faith.[60]  The court disagrees. Federated's initiation of an investigation regarding the potential existence of coverage, before the Avanses notified Federated about the accident, cannot be considered a sign of bad faith.  Instead, it is strong evidence of good faith attention to the needs of injured policy holders.

The Avanses also argue that Federated's decision not to seek the advice of coverage counsel until after Federated had denied the claim is evidence of bad faith.[61] The Avanses provide no evidence to suggest that, at the time that the decision to deny coverage was made, Federated had any need to consult counsel.  When Federated was

---

[59] *See* doc. no. 61, at 22.

[60] *See id.*

[61] *See id.*

presented with the possibility of an ambiguity by the Avanses' counsel in October of 2007 — *more than one year after Federated's decision to deny coverage* — Federated reexamined the issue and hired coverage counsel to determine whether the policy contained an ambiguity.[62]

Lastly, the Avanses argue that Federated's failure to inquire about or investigate the opinions of the three insurance professionals referenced in the October 26, 2007 letter written by the Avanses' counsel constitutes evidence of abnormal bad faith.[63]  However, as the Avanses acknowledge in their own submissions to the court, "whether an insurance company is justified in denying a claim must be judged by what was before it at the time the decision is made." *Dutton*, 419 So. 2d at 1362. Because the opinions of three insurance professionals were not available to Federated when it denied coverage to the Avanses on May 11, 2006, they cannot be considered in evaluating Federated's coverage decision.

Because the Avanses have failed to provide sufficient evidence to establish the elements of either a normal or abnormal bad faith claim, Federated is entitled to summary judgment.

## B.    Breach of Contract Counterclaim

---

[62]*See* Claim File Document, at FED 0096; Deposition of Beth Plunkett at 50.

[63] *See* doc .no. 61, at 22.

In addition to their bad faith counterclaim, the Avanses assert a breach of contract counterclaim.  Since Judge Johnson determined that the Federated policy offers UM/UIM benefits to the Avans, Federated offered to deposit the limits it contends exist under the Federated policy for the Avans' UM/UIM claims: $120,000.[64]  However, the Avans contend that the Federated policy offers $120,000 for Mr. Avans and $120,000 for Mrs. Avans, for a total recovery of $240,000.

Alabama Code § 32-7-23 (1975) states that "[t]he recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, *but not to exceed two additional coverages* within such contract." *Id.* (emphasis added).  This statute requires that insurers provide uninsured motorist coverage in the same minimum limits required under the provisions of Alabama Code § 32-7-6(c) for liability purposes.  Prior to the 2008 amendment, the minimum limits required by § 32-7-6 were $20,000 per person and $40,000 per accident.  Accordingly, during the relevant time period, the statutory maximum allowed by stacking a minimum limits policy was $60,000 *per person* ($20,000 multiplied by three vehicles) and $120,000 *per accident* ($40,000 multiplied by three vehicles).

---

[64] *See* doc. no. 52 (Motion to Deposit Funds).

The Federated policy provides underinsured/uninsured motorist benefits as

follows:

> . . . For all directors, officers, partners or owners of the named insured
> and their "family members" who qualify as "insureds" under the WHO
> IS INSURED of the Uninsured and Underinsured Motorists Coverage
> attached to this policy, the limit of insurance shall apply per "accident"
> as follows:
>
> $40,000 Uninsured Motorist.   *This limit of insurance is for each
> "accident" and is  the most we will pay for all damages resulting from
> any one "accident" or "loss" regardless of the number of directors,
> officers, partners, owners or family members involved* unless otherwise
> stated in the Uninsured and Underinsured Motorists Coverage attached
> to this policy.[65]

Additionally, the policy allows "stacking" UM/UIM benefits up to, but not exceeding,

three (3) times the amount of UM/UIM coverage requested under the policy:

> D.     Limit of Insurance
>
>     1.     Regardless of the number covered "autos," "insureds,"
>            premiums paid, claims made or vehicles involved in the
>            accident, *the most we will pay for all damages resulting
>            from any one "accident" is the limit of the Uninsured
>            Motorist Insurance shown in the declarations.  If there is
>            more than one covered "auto," our limit of insurance for
>            any one "accident" is the sum of the limits applicable to
>            each covered "auto" subject to a maximum of three
>            "covered" autos.*[66]

Under the Federated policy, $120,000 — $40,000 multiplied by three vehicles — is

---

[65] Doc. no. 56, Ex. V (Alabama Uninsured Motorist Coverage Endorsement) (emphasis supplied) at 7.

[66] *Id.* at 3.

the maximum amount available in UM/UIM coverage, regardless of the number of claims made resulting from one accident.  Federated maintains that its policy complies with § 32-7-23 by allowing the Avans to stack coverage up to "the limits applicable to each covered 'auto' subject to a maximum of three 'covered' autos."

Counterclaim plaintiffs argue that each insured is entitled to separately stack the $40,000 *per accident* limit for a combined total of $240,000.  In support of that argument, the Avanses cite the Alabama Supreme Court's opinion in *Employers Liability Insurance Corporation, Ltd. v. Jackson*, 270 So. 2d 806 (Ala. 1972), *disapproved* (on an unrelated issue) *by Great Central Insurance Co. v. Edge*, 298 So. 2d 607 (Ala. 1974).  That case, however, does not guide the court's analysis in this case.  In *Jackson*, the policy contained   $10,000 per person/ $20,000 per accident limits and insured only two vehicles, which, after stacking, limited the total recovery to $40,000.  *See id.* at 808.  The Court in *Jackson* enforced the "per person" limits subject to the stacking limitation provided by Alabama Code § 32-7-23(c).  *See id.* at 810.  For the policy at issue in that case, stacking either the per person or per accident limits resulted in the same maximum recovery under the policy regardless of the number of qualifying insureds: $40,000.  Each insured was entitled to stacked coverage of $20,000, with the maximum recovery being the stacked per accident limits of $40,000.

Federated's policy provides a $40,000 *per accident* limit, but it does not state a *per person* limit.  The court finds that the policy is compliant with the requirements applicable at the time of the issuance of the policy and is due to be enforced.  The parties agree, and this court finds that pursuant to the policy, the Avanses are entitled to stack the per accident limit of $40,000.  However, the court finds that the total recovery is limited to $120,000 by the language of the policy and Alabama law.

## IV.  CONCLUSIONS, ORDER, and FINAL JUDGMENT

For all of the foregoing reasons, Federated's motion for summary judgment on the bad faith counterclaim is due to be, and it hereby is, GRANTED, and defendant/counterclaim plaintiffs' bad faith claim is DISMISSED with prejudice.

With regard to the counterclaim for breach of contract, the court finds that the total recovery is limited to $120,000.  Accordingly, it is CONSIDERED, ORDERED, and ADJUDGED that final judgment be, and the same hereby is, entered in favor of Steve Avans and Pam Avans in the sum or amount of ONE HUNDRED TWENTY THOUSAND ($120,000.00) DOLLARS and NO CENTS.  Costs are taxed as paid. The Clerk is directed to close this file.

DONE and ORDERED this 26th day of July, 2010.

_____
United States District Judge